**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LESTER BLOUNT** | ) | |
| | ) | |
| ***Plaintiff,*** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-03383-CKK** |
| | ) | |
| **CONSTELLIS, LLC.** | ) | |
| | ) | |
| ***Defendant.*** | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CONSTELLIS, LLC'S MOTION TO DISMISS**

Plaintiff Lester Blount ("Plaintiff" or "Mr. Blount"), by and through undersigned counsel, respectfully submits this Opposition to Defendant Constellis, LLC's ("Defendant" or "Constellis") Motion to Dismiss Plaintiff's Complaint ("MTD"). For the reasons set forth below, Defendant's Motion should be denied.

## I. INTRODUCTION

Defendant seeks dismissal of Plaintiff's Complaint on three grounds: (1) that this Court lacks personal jurisdiction over Constellis; (2) that venue is improper in the District of Columbia; and (3) that Plaintiff has failed to state a plausible claim for race discrimination under 42 U.S.C. § 1981. MTD at 1–3. Each argument either disregards material allegations of the Complaint, applies a standard inappropriate at the pleading stage, or, with respect to venue, overlooks the consequence of Defendant's own decision to remove this action from the Superior Court of the District of Columbia.

The Complaint alleges substantially more than Defendant's characterization suggests. Plaintiff alleges that he began working as a background-investigations contractor for Constellis in 2020; that Constellis assigned him investigative work, including investigations to be

completed in the District of Columbia; and that the parties operated under a continuous contractual arrangement pursuant to which Plaintiff routinely received investigative assignments on a rolling basis and reasonably expected continued assignments and compensation. Compl. ¶¶ 5–6, 12. These allegations are directly relevant both to specific personal jurisdiction and to Plaintiff's rights under § 1981.

The Complaint further alleges a repeated pattern of race-based differential treatment within that contractual relationship. Plaintiff alleges that Constellis denied him work in affluent white areas while providing such assignments to white investigator counterparts; instead offered him assignments in predominantly Black areas that white investigators refused; restricted Plaintiff to one contract even though he was cleared and qualified to work on several contracts while white counterparts received multiple contract opportunities; substantially reduced and ultimately ceased his assignments while continuing to award similar work to white investigators with comparable or lesser qualifications; and denied Plaintiff another contract investigator position that he previously held and for which he was qualified. Compl. ¶¶ 7–12, 21–25, 32, 34–39. Those are factual allegations of differential treatment, not merely a conclusory invocation of race.

At the pleading stage, Plaintiff is not required to prove his case or establish every element of a prima facie discrimination case through evidence. The Court must instead determine whether the pleaded facts, accepted as true and viewed together, plausibly permit an inference of intentional discrimination. *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014). Plaintiff's allegations clear that threshold.

Defendant's jurisdictional challenge likewise cannot be resolved simply by accepting the declaration Defendant submitted to contradict Plaintiff's allegations. Plaintiff alleges that Defendant assigned him investigations in the District and that those assignments formed part of

the same ongoing contractual relationship that Defendant later administered in a discriminatory manner. Compl. ¶¶ 6–12. Plaintiff further confirms under penalty of perjury that he performed investigative work through Constellis, received assignments through that relationship, and was assigned background investigations to complete in the District of Columbia. Blount Decl. ¶¶ 3–5, 16. At minimum, the sharp factual conflict between Plaintiff's sworn account and Defendant's declaration warrants limited jurisdictional discovery before the extraordinary remedy of dismissal is imposed.

Finally, Defendant's venue argument fails for an independent reason. Defendant removed this action from D.C. Superior Court to this Court. In a removed action, venue is fixed by the federal removal statute, 28 U.S.C. § 1441(a), which directs removal to the federal district embracing the state court where the action was pending. The Supreme Court has expressly held that the general venue statute does not control venue following removal. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66 (1953). Defendant therefore cannot remove this action to the only federal district authorized by § 1441(a) and then obtain dismissal under Rule 12(b)(3) by arguing that § 1391 would not have authorized Plaintiff to file the action here originally.

For all of these reasons, the Motion should be denied.

## II. RELEVANT COMPLAINT ALLEGATIONS

Plaintiff Blount is an African American male who began working as a background-investigations contractor for Defendant Constellis in 2020. Compl. ¶¶ 3, 5. Plaintiff is a former United States Secret Service Special Agent and alleges that he was qualified, cleared, and authorized to perform the investigative work assigned through Defendant. Compl. ¶¶ 5, 7, 10.

Plaintiff alleges that he was regularly assigned background investigations and typically earned approximately $6,000 per month performing that work. Compl. ¶ 6. Significantly for

purposes of Defendant's jurisdictional challenge, Plaintiff specifically alleges that he was assigned background investigations to complete in the District of Columbia. Id. Plaintiff further alleges that he and Constellis operated under a continuous contractual arrangement in which investigative cases were routinely assigned to him on a rolling basis, creating an ongoing contractual relationship through which Plaintiff reasonably expected continued assignments and compensation. Compl. ¶ 12.

Plaintiff observed that Constellis distributed those assignments in a racially discriminatory manner. Compl. ¶¶ 7–11. Plaintiff made himself available to work in all areas and requested assignments in affluent white suburban areas, including Boca Raton, Florida, but was denied such an assignment even though he was available and authorized to perform it. Compl. ¶ 7. Plaintiff alleges that assignments in more affluent areas were instead given to his white investigator counterparts. Compl. ¶ 8. Conversely, Plaintiff was primarily offered assignments in neighborhoods that white investigators refused to work in and that were perceived as undesirable or high-crime because of their predominantly Black populations. Compl. ¶ 9.

The disparity extended beyond geographic assignments. Plaintiff alleges that he had completed the necessary training, was cleared and authorized to work on multiple contracts, and was nevertheless permitted to work on only one contract, while his white counterparts received opportunities to work on multiple contracts. Compl. ¶¶ 10–11.

The discriminatory pattern later intensified. In 2023, although Plaintiff remained approved and eligible to work on several contracts, Constellis substantially reduced his workload while allowing white counterparts to work on those contracts. Compl. ¶¶ 20–22. When Plaintiff asked Constellis why his workload had been reduced, Ms. Sonya Mageau stated that Plaintiff had been turning down work and that it therefore would not make sense to approve him for other contracts. Compl. ¶ 23. Plaintiff specifically disputed that explanation and responded that he had

been waiting nearly two years for approval on additional contracts and that only minimal cases had been made available to him. Id.

Constellis thereafter ceased offering Plaintiff contract opportunities without formally terminating the contractual relationship. Compl. ¶¶ 24–25. At the same time, Defendant continued awarding similar work to white investigators whom Plaintiff alleges had comparable or lesser qualifications. Compl. ¶ 24. Defendant thereby denied Plaintiff the opportunity to continue earning income under the parties' ongoing contractual relationship. Compl. ¶ 25.

Plaintiff further alleges that Constellis conducted a credit check without his knowledge or consent, required additional background reinvestigation measures, removed him from the UNIcycle contract, and denied him opportunities to work on other contracts for which he had been cleared and authorized. Compl. ¶¶ 26–31. Plaintiff alleges that white counterparts were not subjected to the same conduct. Compl. ¶ 39.

Finally, in August 2025, Plaintiff applied for a contract investigator position in Miami, Florida—a position Plaintiff had previously held with Defendant. Although Plaintiff alleges that he was qualified for the position, Defendant denied him the opportunity. Compl. ¶ 32.

Count I alleges that Defendant intentionally interfered with Plaintiff's right to make and enforce contracts on equal terms because of his race in violation of 42 U.S.C. § 1981. Compl. ¶¶ 33–43.

## III. ARGUMENT

### A. THE COURT MAY EXERCISE SPECIFIC PERSONAL JURISDICTION OVER CONSTELLIS OR, AT MINIMUM, PLAINTIFF IS ENTITLED TO LIMITED JURISDICTIONAL DISCOVERY.

Defendant first argues that the Court lacks personal jurisdiction because Constellis is not incorporated or headquartered in the District, allegedly does not transact business here, and contends that the discriminatory acts identified in the Complaint concern locations outside the

District. MTD at 3–7. In support, Defendant relies on the Declaration of John O. Bolen, who categorically states that Constellis never contracted with Plaintiff, never assigned him work, never reduced his workload or participated in assignment decisions, and never performed a background or credit check on him. MTD at 4–6; Bolen Decl. ¶¶ 1, 6–8. Plaintiff's response is that those assertions conflict directly with both the Complaint and Plaintiff's sworn declaration concerning the parties' ongoing contractual relationship, Plaintiff's D.C. investigative assignments, Defendant's reduction and cessation of assignments, and the September 2023 credit inquiry. Compl. ¶¶ 5–6, 12, 21–31; Blount Decl. ¶¶ 3–18. Those factual conflicts support specific jurisdiction and, at minimum, targeted jurisdictional discovery rather than dismissal.

**1. Plaintiff Relies on Specific, Not General, Personal Jurisdiction.**

Defendant begins by arguing that Constellis is not subject to general personal jurisdiction because it is organized under Delaware law and headquartered in Virginia. MTD at 3–4. Plaintiff need not establish general jurisdiction because the Complaint provides a basis for specific, conduct-linked jurisdiction arising from Defendant's suit-related activities concerning Plaintiff's ongoing assignment relationship.

General jurisdiction and specific jurisdiction are distinct. General jurisdiction permits adjudication of claims unrelated to a defendant's forum contacts when the defendant is essentially "at home" in the forum, whereas specific jurisdiction focuses on the relationship among the defendant, the forum, and the particular litigation. *Daimler AG v. Bauman*, 571 U.S. 117, 127–39 (2014); *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020). Because Plaintiff invokes specific jurisdiction under D.C. Code § 13-423(a)(1) and (2), Defendant's discussion of whether Constellis is "at home" in the District does not resolve the jurisdictional question presented here.

**2. Plaintiff Has Alleged Suit-Related Business Contacts With the District Sufficient to Support Specific Jurisdiction or, at Minimum, Jurisdictional Discovery.**

Defendant next argues that D.C.'s long-arm statute does not reach Constellis because Defendant allegedly did not transact business or contract to supply services in the District and because the particular adverse assignments identified by Defendant occurred elsewhere. MTD at 4–6; Bolen Decl. ¶¶ 4, 8. That argument isolates individual examples of discrimination from the broader contractual assignment relationship alleged in the Complaint and simultaneously asks the Court to accept Defendant's declaration over Plaintiff's contrary factual allegations.

D.C. Code § 13-423(a)(1) authorizes jurisdiction over a person as to a claim arising from "transacting any business in the District of Columbia," while § 13-423(a)(2) extends jurisdiction to claims arising from "contracting to supply services in the District of Columbia." Under the transacting-business provision, the statutory and due-process inquiries merge because § 13-423(a)(1) reaches to the full extent permitted by due process. Urquhart-Bradley, 964 F.3d at 44 (citing *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013)).

Here, the Complaint does not merely allege that Defendant "may be found" in the District. It specifically alleges that Constellis assigned Plaintiff background investigations to complete in the District of Columbia. Compl. ¶ 6. Plaintiff confirms that fact under penalty of perjury, stating that he received investigative assignments through his working relationship with Constellis and was assigned background investigations to complete in the District of Columbia. Blount Decl. ¶¶ 3–4. The Complaint further alleges that those assignments were part of a continuous contractual arrangement under which Constellis routinely assigned Plaintiff investigative cases on a rolling basis and through which Plaintiff reasonably expected continued assignments and compensation. Compl. ¶ 12; Blount Decl. ¶ 5. Plaintiff's § 1981 claim challenges Defendant's administration of that assignment relationship—specifically, the discriminatory distribution, reduction, and cessation of contract work. Compl. ¶¶ 7–12, 21–25, 34–39.

*Urquhart-Bradley* is instructive. There, the D.C. Circuit considered personal jurisdiction in an employment-discrimination action and emphasized that suit-related employment contacts directed toward the District count in the minimum-contacts analysis. 964 F.3d at 44–48. The court explained that the relevant inquiry concerns the defendant's own suit-related conduct and the relationship among the defendant, the forum, and the litigation. Id. at 44. The court further recognized that communications and employment decisions directed toward a D.C.-connected employment relationship may constitute relevant jurisdictional contacts even when the defendant acts from outside the District. Id. at 47–48.

Although Plaintiff here was a contractor rather than an employee based in a D.C. office, the same jurisdictional principle applies. Plaintiff alleges that Constellis affirmatively supplied him with investigative work to be performed in the District and administered an ongoing contractual assignment relationship that included those D.C. services. Compl. ¶¶ 6, 12. Plaintiff's sworn declaration independently confirms that he performed investigative work through Constellis, received D.C. assignments through that relationship, and communicated with Constellis personnel regarding assignments, contract eligibility, workload, and continued work. Blount Decl. ¶¶ 3–5, 16. The discrimination claim is directed to Defendant's alleged unequal administration of that same assignment relationship. Compl. ¶¶ 7–12, 21–25, 34–39. Those allegations and sworn facts provide considerably more than a random or fortuitous connection between Defendant and the District.

Defendant attempts to defeat those allegations through the Declaration of John O. Bolen, Defendant's Vice President of the Investigative Services Group. MTD at 5–6; Bolen Decl. ¶ 1. Mr. Bolen states that he has held that position only since March 30, 2025, yet his declaration makes categorical representations concerning the parties' relationship and events dating back years before that date. Bolen Decl. ¶¶ 1, 6–8. Specifically, he states that Constellis never hired,

employed, contracted with, or otherwise retained Plaintiff; that Plaintiff never performed work for Constellis; that Constellis never assigned Plaintiff work, denied him work, added or removed him from a contract, reduced his workload, or participated in assignment decisions; and that Constellis never performed a background check or credit check on Plaintiff. Id. ¶¶ 6–8. Those assertions directly contradict the Complaint's allegations that Plaintiff performed background-investigation work for Constellis beginning in 2020, received D.C. assignments through an ongoing contractual arrangement, experienced a reduction and cessation of assignments, and was subjected to a credit check in September 2023. Compl. ¶¶ 5–6, 12, 21–31. The breadth of those conflicts, together with the fact that Mr. Bolen's stated tenure in his current position began in 2025, makes discovery into the factual and documentary basis for his historical assertions especially appropriate.

The September 14, 2023 TransUnion notice identified by Plaintiff supplies an additional concrete basis for such discovery. Plaintiff authenticates the notice in his sworn declaration as a true and correct copy of the written notice he received. Blount Decl. ¶ 10 & Ex. A. The notice states that an inquiry had been made on Plaintiff's credit file by "US GOVT / ICCB-CENTRUM 4C-101 / WASHINGTON, DC 20511," and further states that "[t]he inquiry was made in connection with an employment background investigation being processed by their office." Blount Decl. ¶ 11 & Ex. A. This notice is consistent with Plaintiff's allegation that he learned on September 14, 2023 that a credit inquiry had been run in connection with his background-investigation process. Compl. ¶ 26. Plaintiff further declares that he did not knowingly authorize Constellis to conduct a credit check at that time and that he does not presently know which person or entity initiated or submitted the inquiry. Blount Decl. ¶¶ 12–13. The notice does not, on its face, establish that Constellis itself initiated or caused the inquiry, and Plaintiff does not ask the Court to make that factual finding now. Blount Decl. ¶ 17. Rather,

because Defendant has affirmatively denied that Constellis ever performed a background or credit check on Plaintiff, Bolen Decl. ¶ 7, the notice identifies a specific, non-speculative line of discovery into who initiated or requested the inquiry, the date and purpose of the request, the entity that submitted it, the records and communications relating to it, and whether it was connected to Constellis, a Constellis client, or background/security-clearance processing associated with Plaintiff's investigative assignments. Blount Decl. ¶¶ 13–14, 17–18.

That discovery also bears directly on the reliability and factual basis of Defendant's jurisdictional presentation. Plaintiff declares that the source and purpose of the TransUnion inquiry, as well as the underlying assignment, contract, and workload records, are not within his possession and are important to resolving the factual disputes raised by the Motion and the Bolen Declaration. Blount Decl. ¶¶ 14, 18. If records concerning the inquiry, Plaintiff's D.C. assignments, or the administration of his contract work establish a connection to Constellis or its assignment process, those records would materially inform the Court's analysis of Defendant's forum contacts and the parties' underlying relationship. Plaintiff therefore respectfully requests that any jurisdictional discovery encompass the records necessary to identify the source and purpose of the September 14, 2023 inquiry and the persons or entities involved in requesting, processing, or communicating about it.

The D.C. Circuit has repeatedly held that jurisdictional discovery should be permitted when a plaintiff demonstrates that discovery can supplement jurisdictional allegations. In *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351–52 (D.C. Cir. 2000), the court held that where a plaintiff demonstrates an ability to supplement jurisdictional allegations through discovery, such discovery is justified. Likewise, Urquhart-Bradley held that it was error to deny limited jurisdictional discovery where discovery concerning the defendant's D.C.

business contacts and role in the challenged employment action would be useful to the jurisdictional inquiry. 964 F.3d at 48–49.

That reasoning fits this case directly. Discovery concerning which Constellis entity administered Plaintiff's assignments; Defendant's records of Plaintiff's D.C. investigative assignments; the contracts under which those assignments were distributed; Defendant's communications concerning Plaintiff's assignment eligibility; the persons responsible for allocating work; and Defendant's D.C.-connected contractual activities would bear directly on whether Defendant transacted business or contracted to provide services in the District through the relationship alleged in the Complaint.

Accordingly, the Court should deny Defendant's Rule 12(b)(2) motion. Alternatively, if the Court concludes that Plaintiff's present jurisdictional showing requires further factual development, the appropriate course is limited jurisdictional discovery rather than dismissal.

**3. Exercising Specific Jurisdiction Would Comport With Due Process.**

Defendant further argues that exercising jurisdiction would offend traditional notions of fair play and substantial justice because Constellis allegedly has no meaningful D.C. contacts and could not reasonably anticipate being haled into court here. MTD at 6–7; Bolen Decl. ¶ 4. That argument again depends on rejecting the Complaint's allegation that Defendant deliberately assigned Plaintiff investigative work in the District as part of their ongoing contractual relationship. Compl. ¶¶ 6, 12.

Due process requires that a defendant have suit-related contacts with the forum such that it could reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76 (1985). The requirement protects defendants from jurisdiction based on "random," "fortuitous," or "attenuated" contacts, but jurisdiction is proper where the defendant itself purposefully creates continuing obligations connected to the forum. Id. at 475–76.

Plaintiff alleges purposeful conduct, not a unilateral or accidental connection. Constellis allegedly selected and assigned Plaintiff investigations to perform in the District. Compl. ¶ 6. Plaintiff confirms under penalty of perjury that he received and performed investigative assignments through Constellis, including assignments in the District of Columbia. Blount Decl. ¶¶ 3–4, 16. Those assignments allegedly occurred within an ongoing contractual relationship through which Defendant repeatedly allocated work and compensation. Compl. ¶ 12; Blount Decl. ¶ 5. The § 1981 claim challenges Defendant's discriminatory administration of that relationship and the denial of equal contractual opportunities. Compl. ¶¶ 34–39.

As *Urquhart-Bradley* explains, suit-related actions directed toward a D.C.-connected working relationship must be counted in determining whether specific jurisdiction exists. 964 F.3d at 44–48. If Defendant deliberately supplied investigative services through Plaintiff in this forum and maintained an ongoing assignment relationship that included such work, it cannot characterize its connection with the District as wholly fortuitous.

At the very least, the factual conflict between Bolen's categorical denial of any contractual relationship or D.C. assignments and Plaintiff's sworn declaration specifically disputing those assertions should be resolved after appropriate jurisdictional discovery, not on the present record. Bolen Decl. ¶¶ 6, 8; Blount Decl. ¶¶ 3–5, 15–16.

**B. DEFENDANT CANNOT OBTAIN DISMISSAL FOR IMPROPER VENUE AFTER REMOVING THIS ACTION TO THE FEDERAL DISTRICT EXPRESSLY DESIGNATED BY 28 U.S.C. § 1441(a).**

Defendant next argues that venue is improper under 28 U.S.C. § 1391 because Constellis does not reside in the District and, according to Defendant, a substantial part of the events giving rise to Plaintiff's claim occurred elsewhere. MTD at 8–9. That argument applies the wrong venue statute to a case Defendant removed from D.C. Superior Court.

The Supreme Court resolved this issue in *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663 (1953). There, as here, the defendant removed a state-court action to federal court and thereafter challenged venue by reference to the general federal venue statute. Id. at 664–65. The Supreme Court held that the general venue statute did not govern because the case had not been "brought" in federal court; it had been removed there. Id. at 665–66. Instead, the venue of a removed action is governed by the removal statute, which places venue in "the district court of the United States for the district and division embracing the place where such action is pending." Id.; 28 U.S.C. § 1441(a).

That holding directly disposes of Defendant's Rule 12(b)(3) argument. Plaintiff filed this action in the Superior Court of the District of Columbia. Compl. at 1. Defendant then elected to remove it to the United States District Court for the District of Columbia. Section 1441(a) identifies this Court as the federal district embracing the D.C. Superior Court. Thus, once Defendant removed the action, venue in this Court followed by operation of § 1441(a), regardless of whether § 1391 would have authorized Plaintiff to commence the action here as an original federal action.

Indeed, Defendant's own Notice of Removal expressly acknowledged this principle. Defendant stated that, "[f]or purposes of removal, the United States District Court for the District of Columbia is the proper venue because it is the federal district court that embraces the Superior Court for the District of Columbia, the forum in which Plaintiff filed the original action." Notice of Removal ¶ 9. Defendant cannot avoid *Polizzi* merely because it reserved a personal-jurisdiction or venue defense in a footnote. A party may preserve personal jurisdiction after removal, but the venue of the removed federal action remains fixed by the removal statute.

Accordingly, Defendant's reliance on § 1391(b)(1)–(3), MTD at 8, does not establish improper venue under Rule 12(b)(3). The Supreme Court's binding decision in *Polizzi* requires rejection of that argument.

Defendant also argues that dismissal is preferable to transfer because Plaintiff's § 1981 claim purportedly suffers from independent substantive defects. MTD at 9. Because venue is proper under § 1441(a), the Court need not reach that argument. In any event, as demonstrated below, the Complaint plausibly states a § 1981 claim. Defendant therefore has no basis to invoke supposed merits defects as a reason to dismiss rather than adjudicate the action in the federal forum Defendant itself selected through removal.

### C. PLAINTIFF HAS PLAUSIBLY ALLEGED INTENTIONAL RACE DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS UNDER 42 U.S.C. § 1981.

Defendant's final argument is that Plaintiff merely invokes his race without alleging facts permitting an inference that Constellis discriminated against him because of race. MTD at 9–13. Defendant specifically argues that Plaintiff has not adequately identified or described similarly situated white comparators and has not plausibly alleged that race was the but-for cause of the challenged treatment. MTD at 10–13. That characterization understates the factual allegations and effectively seeks to impose a summary-judgment comparator standard at the pleading stage.

#### 1. Plaintiff Is Not Required to Prove a Prima Facie Discrimination Case at the Pleading Stage.

Defendant relies on the elements commonly used to evaluate circumstantial discrimination claims and argues that Plaintiff has failed to supply enough comparator detail. MTD at 10–12. Although those elements may inform the plausibility inquiry, binding D.C. Circuit precedent makes clear that a complaint cannot be dismissed merely because it does not plead every element of a prima facie case.

In *Brown v. Sessoms*, 774 F.3d 1016 (D.C. Cir. 2014), the D.C. Circuit expressly held that, "[a]t the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case." Id. at 1023 (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)). The relevant inquiry is whether the factual allegations, considered together and with reasonable inferences drawn in Plaintiff's favor, plausibly support intentional discrimination. Id.

The Supreme Court similarly explained in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002), that the McDonnell Douglas prima facie framework is an evidentiary standard rather than a rigid pleading requirement. Although *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), require factual allegations sufficient to make discrimination plausible, they do not transform the prima facie evidentiary framework into a heightened pleading rule.

The D.C. Circuit recently clarified this point in *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 529–33 (D.C. Cir. 2025). Joyner explained that the D.C. Circuit has never required a complaint to allege facts showing that a comparator's circumstances are nearly identical to the plaintiff's in all relevant respects. Id. at 531. Rather, at the pleading stage, a plaintiff relying on comparator allegations must allege that a comparator was similarly positioned in at least some relevant respects and provide enough detail to permit a plausible inference that discrimination caused the differential treatment. Id. The evidentiary burden at summary judgment and trial is substantially more onerous than the pleading burden. *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017).

This case therefore cannot be resolved by demanding evidence Plaintiff could ordinarily obtain only through discovery—such as personnel files, comparative assignment histories, exact

supervisor structures, clearance records, and Defendant's internal criteria for allocating individual investigative assignments.

**2. Plaintiff Adequately Alleges an Existing Contractual Relationship Protected by § 1981.**

Defendant focuses principally on discriminatory intent but also disputes, through its declaration, that Constellis ever contracted with Plaintiff. MTD at 5–6. The Complaint, however, expressly and repeatedly alleges an ongoing contractual relationship, and that allegation must be accepted as true for purposes of Rule 12(b)(6).

Section 1981 protects the equal right "to make and enforce contracts" without racial discrimination. 42 U.S.C. § 1981(a). In *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006), the Supreme Court explained that a § 1981 plaintiff must identify an impaired contractual relationship under which the plaintiff possesses rights.

Plaintiff has done exactly that. He alleges that he began performing background-investigation work for Defendant in 2020 and received regular assignments for which he earned compensation. Compl. ¶¶ 5–6. Plaintiff expressly alleges that he and Defendant "operated under a continuous contractual arrangement" through which he was routinely assigned investigative cases on a rolling basis and reasonably expected continued assignments and compensation. Compl. ¶ 12. He further alleges that Constellis did not formally terminate the relationship but ceased offering him work, thereby denying him income available under the ongoing contractual relationship. Compl. ¶¶ 24–25.

Count I then expressly alleges that Defendant interfered with Plaintiff's right to make and enforce contracts by denying him contractual opportunities afforded to similarly situated white contractors. Compl. ¶¶ 34–39. These allegations identify both the contractual relationship and the manner in which Defendant allegedly impaired Plaintiff's contractual rights because of race.

**3. The Complaint Contains Specific Facts Supporting a Plausible Inference of Race Discrimination.**

Defendant argues that Plaintiff does nothing more than refer to unnamed "white counterparts" and therefore provides no factual basis from which discrimination can be inferred. MTD at 10–13. The Complaint goes considerably further: it identifies the nature of the comparator relationship, the specific contractual opportunities at issue, Plaintiff's qualifications for those opportunities, and the materially more favorable treatment allegedly afforded to white investigators.

A plaintiff may support an inference of discrimination by alleging that similarly situated persons outside the protected class received more favorable treatment. *Brown*, 774 F.3d at 1022–23. In *Brown*, the D.C. Circuit reversed dismissal where the plaintiff alleged that a white comparator received a contractual employment benefit despite comparable deficiencies and qualifications. Id. at 1023. The significance of *Brown* is that the comparison, when combined with the pleaded circumstances, permitted a reasonable inference of discriminatory treatment; the plaintiff was not required to prove the comparison before discovery.

The D.C. Circuit's decision in *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017), is also instructive in the contractual context. There, the court emphasized that the pleading-stage burden is not onerous and held allegations sufficient where the plaintiff identified relevant qualifications to perform the same work and alleged that similarly situated white-owned companies received more favorable contracting treatment. The case illustrates that § 1981 discrimination may be plausibly pleaded through differential access to contracting opportunities where the plaintiff alleges the relevant similarity between itself and the favored comparators.

Plaintiff makes comparable factual allegations here. He alleges that he was an experienced former Secret Service Special Agent who had been performing background

investigations for Constellis since 2020. Compl. ¶ 5. He alleges that he was available and authorized to perform the Boca Raton assignment but that Defendant gave the assignment to another investigator. Compl. ¶ 7. He then expressly alleges that assignments in affluent areas were given to his white investigator counterparts. Compl. ¶ 8.

Plaintiff further alleges that white investigators refused assignments in predominantly Black areas and that those assignments were then disproportionately offered to him. Compl. ¶ 9. That allegation describes the relevant comparison: investigators performing the same type of work within Defendant's assignment system allegedly received materially different geographic opportunities correlated with race.

The Complaint also identifies another concrete contracting disparity. Plaintiff alleges that he completed required training, was cleared and authorized to work on multiple contracts, yet Defendant permitted him to work on only one contract. Compl. ¶ 10. His white investigator counterparts, by contrast, were provided opportunities to work on multiple contracts. Compl. ¶ 11.

The disparate treatment allegedly continued when Defendant reduced Plaintiff's workload. Compl. ¶¶ 21–23. Plaintiff alleges that although he remained approved to work on several government contracts, Defendant substantially reduced his assignments while white counterparts continued working on those contracts. Compl. ¶ 21. When Plaintiff asked why, Defendant stated that he had been declining assignments, a contention Plaintiff specifically disputed by explaining that he had been awaiting additional contract approval for nearly two years and had received only minimal available cases. Compl. ¶ 23.

Finally, Plaintiff alleges that Defendant ceased offering him contract work altogether while continuing to award similar work to white investigators with "comparable or lesser

qualifications." Compl. ¶ 24. Plaintiff also alleges that white counterparts were not subjected to the credit-check and reinvestigation treatment imposed on him. Compl. ¶ 39.

Those allegations distinguish this case from *Joyner*. In *Joyner*, the D.C. Circuit found comparator allegations insufficient because the plaintiff alleged essentially only that several white attorneys worked at the same law firm and received amorphously defined "workstream" assignments, without factual allegations establishing comparable positions, projects, qualifications, or decisionmakers. *Joyner*, 140 F.4th at 531–33.

Here, by contrast, Plaintiff alleges that the favored individuals were fellow investigators participating in the same type of contract-assignment system; that Plaintiff was authorized and qualified to perform the same investigative work; that he was available for the desired assignments; that white investigators received those assignments; that white investigators were approved for multiple contracts while Plaintiff was limited to one despite his clearance and training; and that white investigators with comparable or lesser qualifications continued receiving similar work after Defendant ceased assigning work to Plaintiff. Compl. ¶¶ 7–12, 21–25.

Those allegations provide the "meaningful benchmark" that *Joyner* requires at the pleading stage. They identify why the favored white investigators were similarly situated in the respects relevant to Plaintiff's theory: they performed the same category of investigative work, competed for the same types of assignments and contract opportunities, and allegedly possessed comparable or lesser qualifications. Whether discovery ultimately establishes that all relevant circumstances were sufficiently similar is a merits question; it is not a basis for requiring Plaintiff to possess Defendant's comparative assignment and personnel records before discovery has commenced.

**4. Plaintiff Plausibly Alleges That Race Was the But-For Cause of the Denial of Equal Contractual Opportunities.**

Defendant further argues that Plaintiff has not adequately pleaded the but-for causation required under § 1981. MTD at 10–13. Defendant is correct that *Comcast Corp. v. National Association of African American-Owned Media*, 589 U.S. 327, 341 (2020), requires a § 1981 plaintiff to plead and ultimately prove that, but for race, he would not have suffered the loss of a protected contractual right. But the Complaint's allegations, taken together, plausibly satisfy that pleading requirement.

*Comcast* did not require a plaintiff to produce evidence of but-for causation at the pleading stage. Rather, it requires that the facts alleged support a plausible inference that the loss of the contractual right would not have occurred absent race. Id. at 341. The D.C. Circuit applied that requirement in *Joyner*, explaining that the ultimate question on a comparator theory is whether the pleaded facts permit a plausible inference that the differential treatment occurred "because of" race. *Joyner*, 140 F.4th at 530–31.

Plaintiff alleges a repeated, race-correlated pattern rather than a single unexplained decision. When Plaintiff sought desirable assignments in affluent white areas, those assignments allegedly went to white investigators while Plaintiff was directed toward predominantly Black areas that white investigators refused. Compl. ¶¶ 7–9. When Plaintiff became qualified and cleared to work on multiple contracts, Defendant allegedly restricted him to one while white investigators received multiple contract opportunities. Compl. ¶¶ 10–11. When Defendant substantially reduced and later ceased Plaintiff's work, it allegedly continued to supply similar assignments to white investigators with comparable or lesser qualifications. Compl. ¶¶ 21–25. And Plaintiff alleges that white counterparts were not subjected to the additional credit-check and reinvestigation conduct imposed upon him. Compl. ¶ 39.

Viewed collectively, these allegations plausibly support Plaintiff's theory that race—not merely random assignment preferences—accounts for the repeated differences in access to desirable work and contractual opportunities. At the Rule 12(b)(6) stage, the Court does not decide whether that inference will ultimately prevail over competing explanations after discovery; it asks whether the factual allegations make the inference plausible.

As the D.C. Circuit emphasized in *Brown*, reasonable inferences must be drawn in the plaintiff's favor at this stage. 774 F.3d at 1023. Plaintiff alleges that he and white investigators were similarly positioned with respect to investigative work, eligibility, and qualifications, yet Defendant repeatedly gave those investigators contractual opportunities denied to Plaintiff. Compl. ¶¶ 7–12, 21–25, 34–39. That is sufficient to move the claim beyond a mere assertion that Defendant acted unlawfully.

**5. Defendant's Arguments Concerning Comparator Qualifications and Alternative Explanations Raise Factual Questions That Should Not Be Resolved Against Plaintiff on a Motion to Dismiss.**

Defendant argues that Plaintiff must identify his comparators by name and plead such matters as their supervisors, regions, work schedules, clearances, experience, and other credentials. MTD at 11–12. That proposed standard is materially more demanding than the pleading standard articulated by the D.C. Circuit.

*Joyner is particularly important on this point because the D.C. Circuit explained that it has never required a complaint to allege that a comparator's circumstances are nearly identical to the plaintiff's in all relevant respects. 140 F.4th at 531. Instead, the complaint must allege that the comparator was similarly positioned in at least some relevant respects and include enough detail to permit a plausible inference that discrimination caused the differential treatment. Id. The more demanding inquiry into whether comparators are sufficiently similar for evidentiary purposes belongs at later stages of the case. See* Nanko Shipping, *850 F.3d at 467.*

Plaintiff provides that contextual information. His comparators were not merely people employed by the same company in unrelated roles. They were white investigator counterparts receiving the same category of investigative assignments and contractual opportunities. Compl. ¶¶ 7–11, 21, 24. Plaintiff alleges why he was similarly positioned: he was qualified, cleared, trained, authorized, and available to perform the work. Compl. ¶¶ 5, 7, 10, 21, 24, 32. He further alleges that white investigators with comparable or even lesser qualifications received similar work after Defendant ceased providing him assignments. Compl. ¶ 24.

Defendant is free after discovery to demonstrate that particular investigators had materially different clearances, schedules, supervisors, geographic availability, or qualifications. But those matters concern whether Defendant can ultimately defeat Plaintiff's comparator evidence, not whether Plaintiff has stated a plausible claim. Requiring Plaintiff to plead information contained principally in Defendant's assignment, contracting, and personnel records would improperly convert Rule 12(b)(6) into a pre-discovery evidentiary proceeding.

Defendant similarly emphasizes the absence of an expressly race-based statement. MTD at 12–13. Direct evidence is not required to state a § 1981 discrimination claim. *Brown* itself recognizes that discrimination may be inferred from disparate treatment of similarly situated persons outside the protected class. 774 F.3d at 1022–23. The absence of an overt racial remark therefore does not eliminate an otherwise plausible inference arising from repeated differential treatment.

Taken together, Plaintiff's allegations provide sufficient factual matter to permit the reasonable inference that Defendant intentionally denied Plaintiff equal contractual opportunities because of his race.

**D. ALTERNATIVELY, ANY PERCEIVED PLEADING DEFICIENCY SHOULD BE REMEDIED THROUGH LEAVE TO AMEND, NOT DISMISSAL WITH PREJUDICE.**

Defendant asks the Court to dismiss the Complaint with prejudice. MTD at 13. Even if the Court concludes that additional factual detail is necessary concerning personal jurisdiction or Plaintiff's § 1981 theory, dismissal with prejudice at this early stage would be unwarranted.

Federal Rule of Civil Procedure 15(a)(2) provides that courts should freely give leave to amend when justice so requires. Under *Foman v. Davis*, 371 U.S. 178, 182 (1962), denial of leave ordinarily requires a reason such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility.

The D.C. Circuit likewise has cautioned against dismissal with prejudice where a pleading defect could potentially be cured. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). There has been no merits discovery here, and this is not a circumstance involving repeated unsuccessful amendments after the Court identified substantive pleading deficiencies.

Accordingly, if the Court identifies any deficiency regarding the relationship between Plaintiff's D.C. assignments and his claims, the specificity of comparator allegations, the contractual relationship, or but-for causation, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant Constellis, LLC's Motion to Dismiss.

In the alternative, if the Court determines that the present record is insufficient to resolve Defendant's Rule 12(b)(2) challenge, Plaintiff respectfully requests limited jurisdictional discovery concerning Defendant's contractual relationship with Plaintiff, Plaintiff's assignments in the District of Columbia, the entity or entities administering those assignments, Defendant's D.C.-related investigative activities, and the persons and records involved in allocating Plaintiff's work.

Should the Court identify any pleading deficiency under Rule 12(b)(6), Plaintiff further requests leave to amend the Complaint rather than dismissal with prejudice.

Date: August 17, 2026

Respectfully submitted,

*/s/ David A. Branch*
David A. Branch
Law Office of David A. Branch & Associates, PLLC
1120 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
(202) 785-2805
davidbranch@dbranchlaw.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026 a true and correct copy of the foregoing Plaintiff Lester Blount's Opposition to Defendant's Motion to Dismiss was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system, including:

Richard J. Batzler, Esq.
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
Tysons, VA 22102
rbatzler@mcguirewoods.com

Igor M. Babichenko, Esq.
ibabichenko@mcguirewoods.com

Daniel P. Peyton, Esq.
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
dppeyton@mcguirewoods.com

*/s/ David A. Branch*
David A. Branch

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LESTER BLOUNT**<br><br>*Plaintiff,*<br><br>v.<br><br>**CONSTELLIS, LLC**<br><br>*Defendant.* | **Civil Action No. 1:25-cv-03383-CKK**<br><br>**Hon. Colleen Kollar-Kotelly** |

**SWORN DECLARATION OF LESTER BLOUNT**

I, Lester Blount, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based upon my personal knowledge:

1. I am the Plaintiff in the above-captioned action. I submit this Declaration in opposition to Defendant Constellis, LLC's Motion to Dismiss and in support of Plaintiff's request for jurisdictional discovery.

2. I am an African American male and a former United States Secret Service Special Agent. I am the Chief Executive Officer and founder of LMB Security.

3. Beginning in or about 2020, I performed background-investigation work through Constellis. I received investigative assignments through that working relationship and was compensated for completing those assignments.

4. During that relationship, I was assigned background investigations to complete in the District of Columbia. The District of Columbia assignments were part of the same ongoing stream of investigative work that I received through Constellis.

5. My relationship with Constellis operated on a continuing basis. Investigative cases were assigned to me on a rolling basis, and I reasonably expected to continue receiving assignments and compensation as long as I remained qualified, cleared, and available for the work.

6. I was trained, cleared, and authorized to work on multiple contracts. I nevertheless observed that I was provided fewer contractual opportunities than white investigator counterparts, including being limited in the contracts and assignments made available to me.

7. In 2023, my workload was substantially reduced even though I remained available and believed that I remained eligible and approved to perform investigative work. I communicated with Constellis personnel concerning the reduction in assignments and my ability to work on additional contracts.

8. On or about May 2, 2023, I asked Sonya Mageau for the reason my workload had been reduced. Ms. Mageau responded that I had been turning down work on the UNIcycle contract and that it therefore would not make sense to approve me for other contracts. I disputed that explanation and explained that I had been waiting for approval to work on other contracts and that only minimal cases had been made available to me.

9. Thereafter, Constellis ceased offering me contract opportunities even though I was not formally told that the contractual relationship had been terminated. I observed that similar investigative work continued to be assigned to white investigators whom I understood to have comparable or lesser qualifications.

10. On or about September 14, 2023, I received a written notice from TransUnion concerning an inquiry that had been made on my credit file. A true and correct copy of the notice I received is attached to this Declaration as Exhibit A.

11. The TransUnion notice identifies the entity associated with the inquiry as “US GOVT / ICCB-CENTRUM 4C-101 / WASHINGTON, DC 20511.” The notice further states that the inquiry was made in connection with an employment background investigation being processed by that office.

12. I did not knowingly authorize Constellis to conduct a credit check on me at that time. Before receiving the TransUnion notice, I was not informed by Constellis that a credit inquiry would be made in connection with my work or continued eligibility for assignments.

13. I do not presently know which person or entity actually initiated the TransUnion inquiry, what entity submitted the inquiry to TransUnion, or whether the inquiry was initiated directly by Constellis, by another entity acting in connection with Constellis-related work, or through a government security or background-investigation process.

14. Those facts are not within my possession. Records identifying the source, purpose, requesting entity, and contractual or security-processing connection for the September 14, 2023 inquiry would be important to determining what occurred.

15. I have reviewed the September 23, 2025 Declaration of John O. Bolen submitted by Constellis in this case. I specifically dispute the statements that Constellis never contracted with or otherwise retained my services, that I never performed work for Constellis, that Constellis never assigned me work, and that Constellis never reduced my workload or participated in decisions concerning my assignments.

16. I also dispute any suggestion that there was no relationship between Constellis and the investigative work I performed. Based on my personal experience, I received and performed investigative assignments through Constellis, including assignments in the District of Columbia, and communicated with Constellis personnel about my assignments, contract eligibility, workload, and continued work.

17. I understand that Mr. Bolen's Declaration states that Constellis never performed a background check or credit check on me. I do not claim that the TransUnion notice, standing alone, establishes that Constellis itself initiated the September 14, 2023 inquiry. I submit the notice because it confirms that an inquiry occurred in connection with an employment background

investigation and because discovery is necessary to identify who initiated it and whether it was connected to my Constellis-related investigative work.

18. The records concerning my assignments, the contracts under which I worked, communications concerning my workload and eligibility, and the source and purpose of the September 14, 2023 TransUnion inquiry are important to resolving the factual disputes raised by Constellis's Motion to Dismiss and the Bolen Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 212026, 2026

Lester Blount (Aug 21, 2026 23:20:12 EDT)

**LESTER BLOUNT**

# EXHIBIT A

**September 14, 2023 TransUnion Notice**

TransUnion

PIN13N00100001-110839810
LESTER B BLOUNT JR
6025 WEDGEWOOD VILLAGE CIR
LAKE WORTH FL 33463-7371

September 14, 2023

Dear LESTER B BLOUNT JR:

TransUnion LLC is a leading consumer credit reporting agency. Our records indicate there has been an inquiry made on your credit file by the company listed below:

US GOVT
ICCB-CENTRUM 4C-101
WASHINGTON, DC 20511

The inquiry was made in connection with an employment background investigation being processed by their office. The file we found, based on the identification they provided, contains public record information. The reverse side of this sheet contains the public record information contained on your credit file and provided to the company listed above as a result of their inquiry.

This notice is being sent to you in compliance with the Federal Fair Credit Reporting Act. If you would like more information on the public record(s), please contact our Consumer Relations Department at the address and phone number below:

*TRANSUNION*
*2 BALDWIN PLACE, P. O. BOX 1000*
*CHESTER, PA. 19016*
*800-888-4213*

*We maintain and safeguard one of the nation's largest databases of consumer credit information. If you would like to obtain a copy of your TransUnion personal credit report, please visit our website at: http://www.transunion.com/direct.*

Sincerely,

TransUnion LLC

Exhibit 2

Pg 6