**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LESTER BLOUNT,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**CONSTELLIS, LLC,**<br><br>***Defendant.*** | **Case No. 1:25-cv-03383-CKK** |

**DEFENDANT CONSTELLIS, LLC'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff's Opposition to Defendant's Motion to Dismiss (the "Opposition") confirms rather than cures the Complaint's fatal defects. *First*, Plaintiff abandons any argument for general jurisdiction. His arguments for specific jurisdiction are equally lacking because he cannot connect any challenged adverse act to the District of Columbia. The lack of general or specific personal jurisdiction over Constellis warrants dismissal. *Second*, Plaintiff's § 1981 claim fails to satisfy the *Twombly* and *Iqbal* pleading standard. Plaintiff has not adequately plead the requisite facts to show any inference of race discrimination or but-for causation. Instead, he relies only on conclusory allegations about unidentified "white counterparts" whose qualifications, supervisors, and circumstances remain entirely unspecified—an approach this Court consistently has found insufficient. *Third*, Plaintiff now even disclaims the allegations in his own Complaint, conceding that he has no knowledge whether Constellis ran a credit check on him despite alleging as much with certainty in his Complaint. Plaintiff's equivocation leaves the Court with a pleading whose

author does not stand behind it. *Lastly*, Plaintiff's fallback requests for jurisdictional discovery and leave to amend cannot substitute for a pleading that states a claim—which this pleading does not.

For the reasons discussed below, Constellis respectfully requests that this Court dismiss the Complaint in its entirety with prejudice under Rules 12(b)(2) and 12(b)(6), or, in the alternative, transfer this action under 28 U.S.C. § 1404(a).

## II. THE COURT LACKS PERSONAL JURISDICTION OVER CONSTELLIS

As set forth in Constellis' opening brief, both general and specific personal jurisdiction are lacking in this case. Plaintiff's arguments to the contrary do not alter this conclusion. After conceding the lack of general jurisdiction, Plaintiff argues that this Court has specific personal jurisdiction over Constellis merely because he performed some investigations in the District of Columbia. (Opp'n (ECF No. 19) at 6–7; *see also* Compl. (ECF No. 1-1) ¶ 6 (alleging only that Plaintiff "was assigned background investigations to complete in the District of Columbia").) Plaintiff's argument is erroneous because he fails to allege that his § 1981 claim arises out of any one of these supposed investigations or any other acts committed in the District of Columbia.

### A. <u>Plaintiff Concedes This Court Lacks General Personal Jurisdiction Over Constellis</u>

Despite alleging that Constellis "may be found [in the District of Columbia]" (Compl. ¶ 2), Plaintiff now expressly states he "need not establish general jurisdiction" (Opp'n at 6). This concession removes any dispute over the lack of general jurisdiction. Constellis is a Delaware limited liability company (with no members in the District of Columbia), which has its headquarters in Herndon, Virginia. (Bolen Decl. (ECF No. 3-2) ¶¶ 2, 4.) It is not "organized under the laws of, or maintaining his or its principal place of business in" D.C., and it is therefore not subject to general jurisdiction under D.C. Code § 13-422. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (general jurisdiction requires that the defendant be "essentially at home" in the

forum); *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 29 (D.D.C. 2014) (requiring contacts "so extensive, so constant, and so prevalent" as to render the defendant at home in D.C.).

### B. Plaintiff Fails to Establish Specific Personal Jurisdiction Arising Out of His Alleged Investigation Assignments in the District of Columbia

After conceding the lack of general personal jurisdiction, Plaintiff misconstrues the requirements of specific personal jurisdiction. Specific jurisdiction requires a two-step inquiry: first, the applicable long-arm statute must reach the defendant; second, the exercise of jurisdiction must comport with due process. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Plaintiff's arguments fall short on both steps.

Plaintiff's ***only*** allegation related to this jurisdiction is that he "was assigned background investigations to complete in the District of Columbia." (Compl. ¶ 6.) The District of Columbia's long-arm statute (D.C. Code § 13-423(b)), however, does not reach Constellis merely because Plaintiff allegedly performed some investigation in this jurisdiction. Where jurisdiction rests solely on the long-arm statute, "only a claim for relief ***arising from*** acts enumerated in this section may be asserted." (*Id.* (emphasis added)). Plaintiff has not met his burden of pleading specific, non-conclusory facts showing that his sole claim arises from Constellis's alleged actions in the District of Columbia. *See First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378–79 (D.C. Cir. 1988) (describing Plaintiff's burden); *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) (requiring "specific" non-conclusory allegations).

Neither Plaintiff's Complaint nor his Opposition identifies even a single adverse act that occurred in the District of Columbia, that Constellis directed at the District of Columbia, or that arose from Plaintiff's alleged investigations in the District of Columbia. To the contrary, each discrete adverse act Plaintiff alleges occurred outside this jurisdiction. (*See* Compl. ¶ 7 (alleging that Constellis denied Plaintiff assignments in Boca Raton, Florida); *id.* ¶ 9 (alleging that Constellis

offered Plaintiff less desirable assignments in Homestead, Florida); *id.* ¶ 32 (alleging that Constellis rejected Plaintiff's application for assignments in Miami, Florida); *id.* ¶¶ 10, 21-23 (alleging that Constellis limited Plaintiff to investigations on one contract and reduced his workload in 2023 through personnel with no connection to the District of Columbia).) In short, Plaintiff fails to allege a single connection between his claim and Constellis's alleged actions in the District of Columbia—let alone that his claim arises from those actions.[1]

Specific personal jurisdiction requires a connection between the defendant's contacts with the forum and the controversy. Unrelated contacts have no bearing on this analysis. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 264 (2017) (specific jurisdiction requires a connection between the forum and the claims); *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (minimum-contacts analysis looks to the defendant's contacts with the forum itself, not its contacts with persons who reside or work there). The Court may not use a "sliding scale" in which substantial unrelated contacts compensate for a missing connection between the forum and the claim. *See Bristol-Myers Squibb*, 582 U.S. at 264. That Plaintiff's alleged investigations in the District of Columbia and the challenged adverse acts allegedly flowed from the same broad "ongoing contractual" relationship (*see* Opp'n at 8), does not transform unrelated contacts into suit-related ones.

Even under a flexible reading of § 13-423(b)'s "arising from" requirement, the claim must bear a "substantial connection" to a defendant's contacts with the District of Columbia. *See Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 334-35 (D.C. 2000). That "substantial connection" is missing entirely from Plaintiff's Complaint. On this point, Plaintiff's reliance on

[1] Nor can he. Constellis is a shared services provider, which does not have and has never had any contracts or projects in the District of Columbia. (Bolen Decl. ¶¶ 3, 5–8.) Its sole employee who works physically in the District of Columbia has no relation to Plaintiff or the allegations in the Complaint. (*Id.* ¶ 4.)

*Urquhart-Bradley v. Mobley*, 964 F.3d 36 (D.C. Cir. 2020), is misplaced. In that case, the company's chief executive officer personally reached into the District of Columbia to terminate the plaintiff from her District of Columbia-based position. *Id.* at 48. The complaint also alleged that the same executive oversaw the company's District of Columbia office, maintained continuing contacts with that office and its locally based employees, placed and then removed the plaintiff from his Executive Leadership team based in the District of Columbia, and directed numerous adverse communications at the plaintiff, culminating in her termination from her District-based job. *See id.* at 48–49. In other words, the alleged adverse acts in *Mobley* occurred in the District of Columbia and arose from the defendant's contacts with this jurisdiction. *See id.* at 48 (holding that these suit-related contacts had "far more heft" than a single termination call and remanding for further jurisdictional analysis).

Plaintiff's allegations are nowhere near those the D.C. Circuit of Appeals found sufficient for specific personal jurisdiction in *Mobley*. Plaintiff neither resided in nor was based out of the District of Columbia; Constellis has no offices, property, or other facilities in this jurisdiction; and Constellis does not hold any contracts with the federal government.[2] (*See* Bolen Decl. ¶¶ 2–5; Compl. ¶ 3.) At most, Plaintiff claims that "some" of the investigations he performed—not one of which he connects to any alleged adverse treatment—happened in the District of Columbia. (*See* Compl. ¶ 6; Blount Decl. ¶¶ 3–5.) That is not enough. *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 176–77 (D.D.C. 2018) (rejecting a theory of specific jurisdiction based on D.C. contacts unrelated to the claims at issue). Plaintiff has not pled the necessary minimum contacts to establish specific personal jurisdiction over Constellis in this Court.

[2]Regardless, this Court does not consider a defendant's government contracts in analyzing personal jurisdiction. *Alkanani*, 976 F. Supp. 2d at 25.

Even if Plaintiff could establish minimum contacts, exercising jurisdiction would not comport with traditional notions of fair play and substantial justice. Here, again, Plaintiff's sole allegation that he was assigned investigations in the District of Columbia falls short. In the second step of the specific personal jurisdiction analysis, courts consider the burden on the defendant, the forum's interests, the plaintiff's interests in convenient relief, the interstate judicial system's interest in efficient resolution, and the states' shared policy interests. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985); *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987). Those considerations weigh against exercising specific personal jurisdiction over Constellis.

Constellis has its headquarters in Virginia. Plaintiff lived in Maryland during the relevant period and resided in Florida when he filed suit. The allegedly adverse job assignments concerned Florida. Plaintiff fails to allege even a single adverse decision connected to the District of Columbia. (Compl. ¶¶ 3, 7, 9, 32; Bolen Decl. ¶ 2.) This Court's exercise of jurisdiction over a dispute between a Virginia company and a Florida resident concerning decisions made outside the District of Columbia would not comport with traditional notions of fair play and substantial justice.

### C. Plaintiff's Declaration Does Not Cure the Complaint's Jurisdictional Defects

Plaintiff's new declaration, even taken at face value, does not save his claim from dismissal for lack of personal jurisdiction. Indeed, it adds nothing new to the deficient allegations in his Complaint.[3] Plaintiff merely claims that he "was assigned background investigations to complete in the District of Columbia" as part of an "ongoing stream" of work and that he communicated with Constellis personnel about assignments, eligibility, and workload. (Blount Decl. (ECF No.

[3] Nor does the alleged conflict between Plaintiff's declaration and the Bolen Declaration change the analysis. Even accepting Plaintiff's version of events as true—that he performed investigations in the District of Columbia through an ongoing contractual relationship with Constellis—his § 1981 claim still does not *arise from* those investigations.

19, pgs. 26-29) ¶¶ 3–5, 16.) The Declaration, however, does not establish any connection between these alleged "investigations … in the District of Columbia" and the adverse actions Plaintiff contends he suffered. Plaintiff has not alleged and cannot allege that any denial of assignments, reduction of assignments, credit inquiry, or other alleged adverse action occurred in the District of Columbia, was decided in the District of Columbia, or arose from his alleged assignments in the District of Columbia.

A declaration that only repeats a complaint's general allegations cannot establish personal jurisdiction. *See Dean v. Walker*, 756 F. Supp. 2d 100, 103–04 (D.D.C. 2010) (granting motion to dismiss for lack of personal jurisdiction where the plaintiff failed to allege facts contradicting the defendant's declaration and where the defendant's contacts with the forum were unrelated to the allegations in the lawsuit). Yet that is all Plaintiff has provided here. Plaintiff's problem is not one of evidence; it is the absence of a ***legal*** basis for personal jurisdiction. Plaintiff ***does not—and cannot—allege any connection between Constellis's alleged unlawful acts and the District of Columbia.*** No additional allegations or declarations can bridge that gap. The Court should therefore dismiss for lack of personal jurisdiction rather than defer the issue while Plaintiff searches in vain for a new jurisdictional theory.

**D. <u>Jurisdictional Discovery Is Not Appropriate and Should Be Denied</u>**

Plaintiff's attempt to save his Complaint from immediate dismissal through a request for jurisdictional discovery fails for three reasons. First, Plaintiff has not made the required detailed showing of what discovery he seeks, what results he expects such discovery to produce, or how those results would establish personal jurisdiction. A request that identifies only broad subject areas, without explaining the jurisdictional fact each would establish, is conclusory and vague. *See Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) (denying discovery where

the request was conclusory and vague). Although the standard is liberal, a plaintiff must have a good-faith basis to believe discovery will establish personal jurisdiction. *See GTE New Media Servs.*, 199 F.3d at 1351–52; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Plaintiff has not established this basis.

Second, Plaintiff's proposed discovery is speculative. He seeks to learn who initiated a credit inquiry (which he now apparently cannot attribute to Constellis, despite doing so in his Complaint[4]) and to explore Constellis' contacts with the District of Columbia generally. Plaintiff's request is based on mere speculation—and the Bolen Declaration already has described Constellis' contacts with this jurisdiction, which are less than minimal. A request based on "mere conjecture or speculation" is insufficient. *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1093–94 (D.C. Cir. 2008), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021); *Gligorov v. Nation of Brunei*, 2026 WL 2276372, at *10–11 (D.C. Cir. Aug. 7, 2026) (denying discovery where the request rested on conclusory references and speculation). Plaintiff's request for jurisdictional discovery therefore should be denied.

Third, Plaintiff's proposed discovery would not cure the defect.[5] *See Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11–12 (D.D.C. 2009) (denying

---

[4] Plaintiff's Declaration now discounts one of the few allegations on which he basis his Complaint—the supposed credit check, which Plaintiff alleges "was run on him ***by Defendant Constellis*** without [his] knowledge, permission and/or consent." (Compl. ¶ 26 (emphasis added); *see also id.* ¶ 39 (alleging that "white counterparts were not subjected to this conduct.").) Indeed, Plaintiff directly contradicts his previous allegations by declaring that he "do[es] not presently know which person or entity actually initiated the TransUnion inquiry, what entity submitted the inquiry to TransUnion, or whether the inquiry was initiated directly by Constellis, by another entity acting in connection with Constellis-related work, or through a government security or background-investigation process." (Blount Decl. ¶ 13; *see also id.* ¶ 17.) This contradiction both highlights the deficiencies in Plaintiff's Complaint and confirms that Plaintiff's request for jurisdictional discovery is an attempt to find a factual predicate he lacks.

[5] Plaintiff's "dispute" with the Bolen Declaration (Opp'n at 10) betrays Plaintiff's fundamental misunderstanding of Constellis business as a shared services provider (for example, Human Resources and finance) for other companies. Constellis is not in the business of investigative work, is not a party to any of the contracts on which Plaintiff provided services, and indeed has no relationship with Plaintiff as an independent contractor. (*See* Bolen Decl. ¶¶ 3, 5, 6.) Thus, jurisdictional discovery could not supply any claim-related contacts with the District of Columbia.

request for jurisdictional discovery because the discovery the plaintiff sought would not affect the jurisdictional analysis); *Lewis v. Mutond*, 62 F.4th 587, 596 (D.C. Cir. 2023) (affirming denial of jurisdictional discovery on the same basis). *Even if* discovery showed that Constellis assigned Plaintiff investigations in the District of Columbia, Plaintiff still has not identified an unlawful act that arose from those investigations (or any other contact between Constellis and the District of Columbia). No additional discovery will help Plaintiff do so.

## III. THE COMPLAINT FAILS TO STATE A § 1981 CLAIM

In addition to the fatal jurisdictional deficiencies, Plaintiff's Complaint fails to adequately plead a claim for violation of § 1981. Specifically, it fails to plausibly allege any inference of race discrimination or the but-for causation necessary to plead a viable claim. Plaintiff's Complaint names no comparator, pleads no meaningful facts about any comparator's qualifications, and identifies no relevant decisionmakers. Instead, it attempts to connect race to the challenged actions through nothing more than a conclusory repetition of "white counterparts." Although Plaintiff need not plead every element of a *prima facie* § 1981 claim to survive dismissal, he must offer more than mere labels and conclusions. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340–41 (2020) (holding a plaintiff "***must initially plead*** . . . that, but for race, [he] would not have suffered the loss of a legally protected right") (emphasis added). Yet that is all he has done.

### A. The Complaint's Comparator Allegations Are Conclusory and Insufficient to Survive a Motion to Dismiss

To support an inference of race discrimination, comparator allegations must provide factual context from which the Court can plausibly infer race-based unlawful treatment. *See, e.g.*, *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025). Plaintiff's Complaint does not do so. The Complaint does not identify a comparator, does not allege a shared supervisor or

decisionmaker, and does not plead any comparator's clearances, certifications, contract eligibility, regions, geographic availability, schedules, or experience. It refers only to "white investigator counterparts" and "white counterparts" who allegedly had "comparable or lesser qualifications." (Compl. ¶¶ 8, 9, 11, 21, 24, 39.) That is not enough.

As this Court has held, the label "counterpart" is "fatally nonspecific," and a claim that such "counterpart" is similarly situated "is just a legal conclusion…." *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 103 (D.D.C. 2021). "[A]nd a legal conclusion is never enough." *Id.* This Court reached the same conclusion earlier this year on materially identical allegations. *See Brandon v. Outpost 24, Inc.*, 2026 WL 366638, at *4 (D.D.C. Feb. 10, 2026) (holding that an allegation that the defendant did not treat non-Black colleagues "in the same manner" was the "threadbare recital of a legal conclusion" insufficient to state a claim) (cleaned up; citation omitted).

Plaintiff's sole gesture toward comparative qualifications fares no better. To state a claim based on comparators, "[t]he qualifications gap [between a plaintiff and his alleged comparators] must be great enough to be inherently indicative of discrimination." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007) (citation omitted). Plaintiff's allegation that unnamed "white investigator counterparts" held "comparable or lesser qualifications" (Compl. ¶ 24), however, gives the Court nothing to measure.[6]

Courts in this District accordingly dismiss disparate-treatment claims built on unidentified comparators. *See Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 334 n.18 (D.D.C. 2018),

[6] Plaintiff effectively concedes this deficiency by characterizing his alleged comparators as "fellow investigators participating in the same type of contract-assignment system" who were "qualified" and "available." (Opp'n at 19.) Plaintiff's argument cannot amend his lacking pleading. *See Sai v. T.S.A.*, 326 F.R.D. 31, 33 (D.D.C. 2018) ("It is axiomatic . . . that a party may not amend his complaint through an opposition brief.") (citation omitted). Even then, Plaintiff still falls well short of pleading an inference of race discrimination through comparators.

*amended on reconsideration*, 390 F. Supp, 3d 46 (D.D.C. 2019), *aff'd*, 815 F. App'x 561 (D.C. Cir. 2020), and *aff'd*, 815 F. App'x 561 (D.C. Cir. 2020) ("Without even the identification of an alleged comparator, the Court cannot determine that the plaintiff's employment situation was nearly identical to any other employee's.") (cleaned up; citation omitted); *SS & T, LLC v. Am. Univ.*, 2020 WL 1170288, at *5 (D.D.C. Mar. 11, 2020) (dismissing where the plaintiff did not explain how the favored parties were similarly situated yet treated differently). Consistent with the applicable case law, Constellis respectfully requests this Court do so here.

**B. <u>The Case Law on Which Plaintiff Relies Supports Dismissal</u>**

The case law on which Plaintiff relies in his Opposition only confirms Constellis's arguments for dismissal by highlighting what is missing from Plaintiff's Complaint. First, in *Brown v. Sessoms*, 774 F.3d 1016 (D.C. Cir. 2014), to survive dismissal, the plaintiff identified a named white comparator who received tenure despite having no legal publications. *Id.* at 1022-23. The plaintiff also pled facts alleging that she was equally or more qualified to the comparator based on their respective tenure applications. *Id.* The court in *Brown* thus had specific allegations from which to draw a comparison. By contrast, Plaintiff pleads no such specific facts. He identifies no comparator, no shared decisionmaker, and no comparable qualifications.

Plaintiff reliance on *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461 (D.C. Cir. 2017), is similarly misplaced. In *Nanko*, the plaintiff alleged that, because of race, the defendant offered "only a few limited micro-tender shipping opportunities" that were "substantially less in value and volume than the shipping rights and contracts" to which the defendant was entitled. *Id.* at 463. To support its claim, the defendant offered allegations of its qualifications to perform the contracts, its use of the same third-party shippers as the companies the plaintiff favored instead, and its offer of lower prices than the companies the defendant used. *Id.* at 467. These specific allegations supplied a meaningful basis for comparison. Plaintiff pleads no comparable facts here, asserting

only that unidentified, unnamed investigators had "comparable or lesser" qualifications. The factual allegations that justified reversing dismissal in *Nanko* simply do not exist in Plaintiff's Complaint.

Finally, in *Wright v. Eugene & Agnes E. Meyer Foundation*, 68 F.4th 612 (D.C. Cir. 2023), the plaintiff alleged sufficient facts to raise her right to relief above the speculative level. *Id.* at 622-23. Specifically, the plaintiff pled that the defendant did not defame her direct predecessor, a white man who also separated from the company, nor any other African-American employee. *Id.* Two additional "sets of allegations push[ed] [the plaintiff's] § 1981 claim farther over the plausibility threshold." *Id.* First, the defendant praised the plaintiff's performance and increased her salary before the termination. *Id.* Second, the plaintiff alleged specific facts "pertaining to the general culture of racial inequity at the [defendant]." *Id.* "Construing these facts in [the plaintiff's] favor—the combination of specific and factually detailed praise, vague and subjective critiques that conflicted with that praise, and an unexpected termination, in addition to the work environment at the [defendant]," the plaintiff alleged sufficient facts to survive dismissal. *Id.* Plaintiff's allegations here are a far cry from those the Court found sufficient in *Wright*.

*Joyner* highlights why these omissions matter. As the D.C. Circuit Court of Appeals held in that case, a plaintiff proceeding on a comparator theory "must plead enough facts about those comparators and the relevant context to allow a plausible inference that he was treated differently because of his race." *Joyner*, 140 F.4th at 530. Alleging that a comparator is "similarly situated," without facts showing similarity "in some meaningful respect," is a "threadbare recital of a legal conclusion." *Id.* at 531 (cleaned up; citation omitted). *Joyner* affirmed dismissal where the plaintiff pleaded "essentially no facts at all to show that his identified comparators were similarly situated to him in relevant respects except that they were attorneys working at the same law firm." *Id.* at

532–33. Plaintiff's allegations here are as lacking as those in *Joyner*. For the same reasons, the Court should dismiss Plaintiff's claim here. *Id.; see also Yee v. Blanche*, 2026 WL 1876231, at *4 (D.C. Cir. June 30, 2026) (comparators' different experience and the pleadings' obvious non-discriminatory explanation defeated the inference of discrimination); *Johnson v. Georgetown Univ.*, 827 F. Supp. 3d 133, 162–66 (D.D.C. 2026) (requiring a "meaningful benchmark" and dismissing where alleged comparators lacked sufficient similarity in roles, qualifications, experience, or decisionmakers).

### C. The Complaint Fails to Plead Sufficient Facts to Raise a Plausible Inference of But-For Causation

Section 1981 requires Plaintiff to plead sufficient facts from which the court can infer that race was the but-for cause of his alleged loss, not merely a motivating factor. *Comcast*, 589 U.S. at 341. He cannot carry that burden by "invok[ing] his race in the course of a claim's narrative." *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990), *aff'd sub nom. Bray v. Hebble*, 976 F.2d 45 (D.C. Cir. 1992).

On this pleading requirement, the Complaint is wholly lacking. Plaintiff pleads no race-based statements, no race-based instructions, and no facts excluding the obvious race-neutral explanations for Plaintiff's alleged adverse treatment. An "obvious alternative explanation" on the face of the pleading defeats an inference of discrimination. *Joyner*, 140 F.4th at 534 (citing *Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024)); *see also Yee*, 2026 WL 1876231, at *4 (holding that an obvious non-discriminatory explanation apparent from the pleadings defeated the inference of discrimination). Several such explanations are apparent on the face of the Complaint: Plaintiff's location and availability for particular cases (Compl. ¶¶ 7, 9, 32); contract-by-contract approval and clearance requirements (Compl. ¶¶ 10, 21, 31); customer-driven background and

reinvestigation processes (Compl. ¶¶ 27, 31); and Constellis's stated reason that Plaintiff rejected work on the UNIcycle contract (Compl. ¶ 23).

Without any allegations even to suggest that race was the but-for cause of Constellis' alleged actions, Plaintiff's Complaint boils down to a mere disagreement with Constellis' decision to reduce his UNIcycle assignments. (Compl. ¶ 23.) This disagreement with Constellis' proffered reason, standing alone, does not permit an inference of discrimination even at the pleading stage. *See Ho*, 106 F.4th at 54 (an "obvious alternative explanation" apparent from the pleadings forecloses a plausible inference of discrimination) (citation omitted). Plaintiff's Complaint therefore should be dismissed.

## IV. THE COURT SHOULD DENY LEAVE TO AMEND AND DISMISS THE COMPLAINT WITH PREJUDICE

Plaintiff's Complaint suffers from fatal defects that cannot be cured by amendment, such that Plaintiff's request for leave should be denied.[7] *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that a court may deny leave to amend where the proposed amendment would not survive a motion to dismiss). Plaintiff already has presented his allegations through a ten (10) page Complaint, a twenty-five (25) page Opposition, and a sworn declaration with an accompanying exhibit—all filed with the benefit of eleven (11) months to develop a cogent argument. Yet these allegations fall well short of establishing personal jurisdiction or a viable § 1981 claim against Constellis. Dismissal with prejudice is particularly appropriate where the allegation of other facts consistent with the challenged pleading could not cure the deficiency. *Firestone v. Firestone*, 76

[7] Plaintiff's request for leave to amend—which he makes at the end of his Opposition—also is procedurally inappropriate. A request buried in an opposition is not a motion. *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130–31 (D.C. Cir. 2012) (affirming denial of leave where the plaintiff "requested leave to amend as an alternative argument in her opposition" and attached no proposed amended complaint, because "a bare request in an opposition to a motion []—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)") (citation omitted). Plaintiff's deadline to amend his Complaint in response to the Motion to Dismiss long has expired.

F.3d 1205, 1209 (D.C. Cir. 1996). That is precisely the case here. Plaintiff's Complaint should be dismissed with prejudice.[8]

## VI. CONCLUSION

For the foregoing reasons, Constellis respectfully requests that the Court dismiss the Complaint in its entirety with prejudice under Rules 12(b)(2) and 12(b)(6) and deny Plaintiff's requests for jurisdictional discovery and leave to amend, or, in the alternative, transfer this action to the Eastern District of Virginia.

Dated: September 1, 2026

Respectfully submitted,

By: */s/ Igor M. Babichenko*
Igor M. Babichenko (*pro hac vice*)
ibabichenko@mcguirewoods.com
Daniel P. Peyton (*pro hac vice*)
dppeyton@mcguirewoods.com
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061

Richard J. Batzler (D.C. Bar No. 90011085)
rbatzler@mcguirewoods.com
**McGuireWoods LLP**
1750 Tysons Blvd, Ste 1800

[8] This Court has recognized that dismissal, rather than transfer, is appropriate where a complaint suffers from serious substantive defects. *See Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 131 (D.D.C. 2010) (dismissal is appropriate where the complaint would likely face dismissal for failure to state a claim in any forum). As discussed above, Plaintiff's Complaint suffers from incurable defects which justify dismissal. As an alternative to dismissal, however, Constellis respectfully requests that this matter be transferred to the Eastern District of Virginia although 28 U.S.C. § 1441(a) establishes proper venue after removal, this Court retains discretion to transfer this action under 28 U.S.C. § 1404(a) after removal. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (§ 1404(a) commits transfer to the district court's "individualized, case-by-case consideration of convenience and fairness"); *DeVaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 70–72 (D.D.C. 2005) (transferring a removed § 1981 action to Maryland under § 1404(a)). The relevant factors, including the location of Constellis' headquarters, heavily favor the Eastern District of Virginia as the appropriate venue. *See Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16–17 (D.D.C. 1996).

Tysons, VA 22102
Tel: (703) 712-5000
Fax: (703) 712-5050

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2026, a copy of the foregoing was electronically filed using the CM/ECF system, which shall send a copy of such filing to all counsel of record.

*/s/ Igor M. Babichenko*
Igor M. Babichenko (*pro hac vice*)
**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
ibabichenko@mcguirewoods.com
*Counsel for Defendant*